1  JEFFREY G. KNOWLES (SBN 129754)
2  CHRISTOPHER J. WIENER (SBN 280476)
   BINA G. PATEL (SBN 315352)
3  COBLENTZ PATCH DUFFY & BASS LLP
4  One Montgomery Street, Suite 3000
   San Francisco, California 94104-5500
5  Telephone: 415.391.4800
6  Facsimile: 415.989.1663
   Email:    ef-jgk@cpdb.com
7            ef-cjw@cpdb.com
8            ef-bgp@cpdb.com

9  Attorneys for Plaintiff
10 SOUNDEXCHANGE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation. | Case No. |
| Plaintiff, | **COMPLAINT FOR UNDERPAYMENT OF STATUTORY COPYRIGHT ROYALTIES** |
| v. | |
| SONOS, INC., a Delaware corporation; and RHAPSODY INTERNATIONAL INC. dba NAPSTER, a Delaware corporation. | **JURY TRIAL DEMANDED** |
| Defendants. | |

013917.0006 4895-6296-0556.9

**COMPLAINT**

Plaintiff SoundExchange, Inc. ("Plaintiff" or "SoundExchange") hereby brings this Complaint for the underpayment of statutory copyright royalties against Defendants Sonos, Inc. ("Sonos") and Rhapsody International Inc. dba Napster ("Rhapsody" or "Napster," and together with Sonos, "Defendants"). Plaintiff, on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

## PRELIMINARY STATEMENT

1. SoundExchange is an independent nonprofit organization organized and existing under the law of the State of Delaware, with its headquarters at 733 10th Street NW, 10th Floor, Washington, DC 20001. SoundExchange is the sole entity in the United States designated by the Library of Congress to collect digital performance royalties from statutory license users and to distribute those royalties to performing artists and copyright owners. Specifically, SoundExchange is charged by statute and regulation with administering the statutory license, *see, e.g.*, 17 U.S.C. § 114(g)(3)(A); 37 C.F.R. § 370.4, collecting and distributing statutory royalties, *see, e.g.*, 17 U.S.C. § 114(g)(2), (3); 37 C.F.R. § 380.7, and enforcing the terms of the statutory license, *see, e.g.*, 17 U.S.C. § 114(g)(3)(C). Pursuant to this authority, SoundExchange collects statutory royalties from television music channels, satellite radio, Internet webcasters, and other types of services for transmission of sound recordings, and distributes those royalties to performing artists and copyright owners.

2. In its over twenty-plus year history, SoundExchange has distributed over $11 billion to music creators and rightsholders. Each year, SoundExchange distributes around $1 billion in royalties collected from approximately 3,600 licensees.

3. Sonos, founded in 2002, is an in-home audio system manufacturer which launched its first commercial hardware products in 2005. In early 2020, Sonos launched its first service, Sonos Radio, a non-interactive music streaming

service available exclusively on its Sonos products, to Sonos customers, controlled via the Sonos smartphone application. Sonos operated Sonos Radio, which was powered by Napster and its streaming catalog, and advertised unique content curated by Sonos and by popular artists on Sonos's behalf.

4. The Sonos Radio service made use of the Copyright Act's "statutory license" to make digital transmissions of sound recordings, and accordingly, streams made on the Sonos Radio service incur an obligation to pay royalties, under the statutory license, to SoundExchange.

5. From its launch in April 2022 until April 2023, SoundExchange received the statutorily mandated royalty reports and payments from Napster on behalf of Sonos for the Sonos Radio service.

6. Starting in May 2022, however, those royalty reports and payments ceased. Sonos and Napster, without explanation or justification, continued to operate the Sonos Radio service in reliance on the statutory license but did so without compensating musicians and rightsholders.

7. Based on information uncovered during a statutory audit and via subsequently provided royalty reports, Sonos and Napster owe SoundExchange in excess of $3.3 million, reflecting royalties incurred but not paid from October 2022 to April 2023, statutory interest, late fees, and the cost of an audit which is shifted by regulation to Sonos and Napster. Late fees continue to accrue each day that Sonos and Napster fail to pay the amounts due.

8. SoundExchange brings this action to recover the royalty amounts that Sonos and Napster owe to SoundExchange, all interest and late fees set by regulation, and the cost of its audit.

## JURISDICTION AND VENUE

9. This is a civil action seeking damages under the Copyright Act, 17 U.S.C. § 101, *et seq*. This Court has original subject matter jurisdiction over Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). A substantial part of the events giving rise to this suit have occurred in this District, and Defendants' contacts with the Central District of California are sufficient to subject it to jurisdiction in this District.

11. Sonos is a Delaware corporation, registered to do business in the State of California and headquartered in Santa Barbara, California, in this District. Sonos provides its Sonos Radio service to customers in the Central District of California. On information and belief, Sonos's correspondence with SoundExchange in advance of this litigation was sent and received in the Central District of California.

12. Rhapsody is a Delaware corporation, with its principal place of business at 701 5th Avenue, Suite 3100, Seattle, Washington 98104. On information and belief, Rhapsody entered into commercial transactions and contracts with Sonos, a resident of California and of this District, relating to the launch and operation of the Sonos Radio service. The failure to pay the required royalties to SoundExchange arises out of Rhapsody's contractual relationship with Sonos in California and this District relating to the Sonos Radio service. On information and belief, through its interactive online services, Rhapsody enters into commercial transactions, contracts, and other arrangements with residents of California. Rhapsody's online activities knowingly and purposely interact with computers and other electronic devices of residents in California and solicit business from California consumers.

## FACTUAL ALLEGATIONS

### A. The Statutory and Regulatory Framework

13. Section 106 of the Copyright Act grants the owner of a copyright in a sound recording the exclusive rights "to reproduce the copyrighted work in copies or phonorecords" and "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. §§ 106(1), (6).

14. As an alternative to having every music service negotiate separate

1  licenses with every copyright owner, Congress has granted various eligible entities
2  the ability to obtain a "statutory license," 17 U.S.C. §§ 112(e), 114(d)(2), to render
3  certain digital public performances of copyrighted sound recordings and make
4  related reproductions.  The federal statutory license, however, is not free.  Eligible
5  entities must comply with applicable requirements, including the payment of
6  established royalties, in order to reproduce and publicly perform all commercial
7  sound recordings without fear of copyright infringement.  *E.g.*, 37 C.F.R. § 380.10.

8       15.    "[R]easonable rates and terms of royalty payments" under the statutory
9  license are set by the Copyright Royalty Judges in adversarial administrative
10 proceedings that occur every five years.  17 U.S.C. §§ 112(e)(3), 114(f).  The "rates
11 and terms" set in proceedings before the Copyright Royalty Judges "distinguish
12 among the different types of [digital audio transmission] services then in operation."
13 17 U.S.C. § 114(f).

14       16.    In October 1998, Congress passed the Digital Millennium Copyright
15 Act ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998), which
16 amended section 114 and other provisions of the Copyright Act.  Among other
17 things, the DMCA put in place a royalty rate standard for the sound recording
18 statutory license.  Services are classified as either "eligible nonsubscription
19 transmission" services or "new subscription service[s]," depending on whether they
20 are provided to consumers on a subscription basis.  17 U.S.C. § 114(j)(6), (8).

21       17.    Licensees must provide SoundExchange monthly royalty payments and
22 Statements of Account for their use of copyrighted sound recordings.  *E.g.*, 37
23 C.F.R. §§ 380.2(b) & 380.3(a).

24       18.    To the extent licensees are late delivering a royalty payment, they must
25 pay a fee of "1.5% (or the highest lawful rate, whichever is lower) of the late
26 payment amount per month." 37 C.F.R. § 380.2(d).  For a late Statement of
27 Account, licensees must pay "1.5% of the payment amount associated with the
28 Statement of Account." *Id*.

19. Applicable regulations also grant SoundExchange the right to audit a licensee's records to verify the royalty payments. Those audits may be conducted annually and may cover any or all of the preceding three calendar years, however, any given calendar year may only be audited once. 37 C.F.R. § 380.6(b) (2011 & 2016).[1] This audit is "binding on all parties." 37 C.F.R. § 380.6(c) (2011 & 2016). Additionally, if there is an underpayment of 10% or more, the licensee must bear the audit's reasonable costs. 37 C.F.R. § 380.6(g) (2011 & 2016).

B.  **Sonos Launches Sonos Radio, Powered By Napster**

20. On April 2, 2020, Napster's General Counsel Matt Eccles, on behalf of Sonos Radio, filed a Notice of Use of Sound Recordings Under Statutory License, which is required before a licensee may make use of the statutory license. The Notice identifies "Sonos Radio" as the name of the service and "http://sonos.com" as the website address of service. Accordingly, Sonos and Sonos Radio are the licensees under the statutory license. Napster was Sonos's authorized agent. Pursuant to the Notice, Sonos Radio was expected to launch on April 21, 2020.

21. As planned, Sonos Radio launched on April 21, 2020. In a press release accompanying the launch, Sonos stated: "Sonos (Nasdaq: SONO) today launches Sonos Radio, a free, ad-supported streaming radio experience, exclusively available to customers in more than 10 million homes globally." *See* "Introducing Sonos Radio, the streaming radio service only on Sonos," *available at* https://www.businesswire.com/news/home/20200421005148/en/Introducing-Sonos-Radio-the-streaming-radio-service-only-on-Sonos.

22. Sonos Chief Executive Officer, Patrick Spence, noted that the new "Sonos Radio brings together streaming radio services and a select set of curated radio stations in a simple, elegant way. This is just a beginning as we work to deliver services that provide our customers a better experience, and provide our

---

[1] Although 37 CFR § 380.6 has been subsequently amended, the regulations governing the audited years (here, 2013 – 2018) govern the audit itself.

music streaming service partners an opportunity to highlight their best content." *Id.*

23. Sonos also made clear to the public in its release that Sonos Radio was its product, designed by Sonos for Sonos customers:

- "Sonos Radio introduces original radio programming from Sonos featuring a range of music handpicked by DJs and artists." *Id.*
- "Sonos' signature ad-free station, Sonos Sound System, is curated and hosted by the Sonos team, recorded in a newly built radio studio in Sonos' flagship store in New York City." *Id.*
- "Sonos designed and developed custom programming and curation tools for Sonos Stations, delivering a regularly refreshed mix of new hand curated music. For the best listening experience across all Sonos Radio streams, Sonos partnered with Super Hi-Fi, a company delivering AI for digital music, for volume leveling across songs and ads, song blending, and seamlessly mixing in voice commentary." *Id.*

24. In an interview with Wired Magazine, Sonos director of business development, Ryan Taylor, confirmed that Sonos Radio was its—Sonos's—"owned and operated" service powered by Napster. *See* "Sonos Launches an Exclusive Radio Station", *available at* https://www.wired.com/story/sonos-radio-launch/.

25. For the transmission periods April 2020 through April 2022, Napster submitted the required statements of account and timely paid all royalties due to SoundExchange, as Sonos's authorized agent.

**C.   Sonos Radio Stops Paying After Napster Is Acquired By Venture Capital Firms**

26. On or about May 2022, Napster was acquired by Hivemind and Algorand, venture capital firms focused on "web3"—*i.e.*, cryptocurrencies and blockchain technology.

27. Matt Zhang, Hivemind's founder and managing partner, stated that "Volatile market and uncertain times often bring exciting opportunities. At Hivemind, we believe in developing thesis and building enduring value. Music x Web3 is one of the most exciting spaces we've come across, and we are thrilled to work with Emmy Lovell and many talents to unlock value for the entire ecosystem and revolutionize how artists and fans enjoy music." *See*

https://www.linkedin.com/posts/mattzhang_music-web3-crypto-activity-6929802236944420864-mX8F/.

28. Unfortunately, Hivemind's excitement did not extend to building value for artists and rightsholders.

29. From May 2022 (*i.e.*, the month of Napster's acquisition) through April 2023, Sonos (as the owner and operator of Sonos Radio) and Napster (as Sonos's agent) failed to submit statements of account or pay royalties to SoundExchange. Nevertheless, Sonos Radio continued to operate, broadcasting creative works without compensating artists.

D. **SoundExchange Audits Sonos Radio**

30. On January 20, 2023, SoundExchange filed a Notice of Intent to Audit Sonos Radio for the years 2020 through 2022. The Copyright Royalty Board subsequently published the Notice of Intent to Audit in the Federal Register, listing Sonos Radio as the service.

31. During the course of the audit, SoundExchange's auditor Armanino obtained the missing royalty reports from May 2022 to December 2022.

32. In its October 24, 2023 report, Armanino described its "Examination of Sonos, Inc. ('Sonos') for the years 2020 through 2022 pursuant to 37 C.F.R. §380.6(b) and 380.15(b). Sonos is subject to payment of royalties for eligible performances made via digital audio transmission pursuant to 17 U.S.C. 114(f), and the making of related recordings pursuant to 17 U.S.C. 112(e). Sonos provides music streaming services covered under the aforementioned statutes."

33. During the audit, it became clear that Napster's acquisition in May 2022 resulted in a complete breakdown of reporting and payment for the Sonos Radio service which neither Sonos nor Napster has ever addressed.

34. According to Armanino, on August 4, 2022, Napster employee Dan Parker stated that "[T]he employee that used to handle the reporting and payment processes is no longer with the company as of May 2022. Unfortunately, at that

point the reporting process within the [SoundExchange] portal stopped."

35. Armanino calculated the missing royalties due as $2,272,574, interest due (through the date of the report) of $384,463, and auditor costs of $59,473. Because the amount owed under the audit exceeded 10%, Sonos and Napster are obligated by federal regulation to pay the audit costs. 37 C.F.R. § 380.6(g) (2011 & 2016).

36. Neither Sonos, nor its agent Napster, have paid all of the amounts identified in the audit.

37. Neither Sonos, nor its agent Napster, have objected to the conclusions of the Armanino audit.

38. In or about April 2023, Sonos ended its partnership with Napster and transitioned the Sonos Radio service backend to Deezer.

39. SoundExchange was subsequently provided with the statements of account for the period January 2023 to April 2023 (up to the Deezer transition). However, neither Sonos nor its agent Napster, paid any royalties for that period.

40. Sonos has attempted to shift blame for nonpayment to its agent Napster, and refused to engage meaningfully with SoundExchange regarding its unpaid royalties and other amounts owed. However, it was Sonos and its "owned and operated" Sonos Radio service that made transmissions in reliance on the statutory license, and it is Sonos who is ultimately responsible for ensuring compliance with that statutory license, including the payment of royalties.

E. **Sonos Radio Owes Millions In Royalties, Interest, Late Fees, and Audit Fees**

41. Sonos and Napster have made certain payments that fall far short of their obligations. In total, Sonos, and its agent Napster, have failed to pay at least $3,423,844.41 comprising royalties owed for the period October 2022 to April 2023, interest, late fees, and auditor fee-shifting costs, and subtracting Sonos and Napster's payments made to date. Late fees and interest continue to grow.

# COUNT ONE

**Violation of 37 C.F.R. § 380.2, 37 C.F.R. § 380.3, 37 C.F.R. § 380.10, and 17 U.S.C. § 114(f)(3)(B) – Underpayment of Statutory Royalties**
**(Against Sonos, Inc. and Rhapsody International Inc.)**

42. SoundExchange incorporates by reference paragraphs 1 to 41 as if fully set forth herein.

43. The Copyright Act provides a statutory license for certain digital performances of sound recordings, as well as related reproductions to facilitate the licensee's performance of sound recordings. 17 U.S.C. §§ 112(e), 114.

44. Because Sonos and Napster have chosen to rely on that statutory license, they must make royalty payments to SoundExchange at the rates set by the Copyright Royalty Judges. 17 U.S.C. §§ 112(e)(6)(A), 114(f)(3)(B).

45. Starting with the license period beginning October 2022, Sonos and Napster have made digital audio transmissions pursuant to the statutory license but failed to pay all the royalties they owe for those transmissions.

46. Starting with the license period beginning May 2022, Sonos and Napster made digital audio transmissions pursuant to the statutory license but failed to pay all the late fees they owe for amounts due or previously due for those transmissions.

47. Sonos and Napster have made certain payments that fall far short of their obligations. Accordingly, Sonos and Napster, after subtracting payments made to date, owe royalties for the period beginning October 2022 which would have been due no later than December 15, 2022.

48. Sonos and Napster's failure to make all required royalty payments contravenes the provisions of the Copyright Act specifying that the rates determined by the Copyright Royalty Judges are "binding on . . . entities performing sound recordings" during the period when the rates are in effect, 17 U.S.C. § 114(f)(1)(B), and that services relying on the statutory license must "pay[] royalty fees in accordance with" § 114(f), *id.* § 114(f)(3)(B). Sonos and Napster's non-payments

also contravene the requirement that a "Licensee must make the royalty payments due under" the regulations to SoundExchange.  37 C.F.R. § 380.2(a).

49.  The cumulative amount of Sonos and Napster's underpayment – which harms SoundExchange, as well as the performing artists and copyright owners on whose behalf it collects and distributes royalties – continues to grow with each passing month, along with the associated late fees under 37 C.F.R. § 380.2(d), and amounts to at least $3,423,844.41.  Late fees and interest continue to accrue at the statutory rates.

50.  Sonos and Napster are jointly and severally liable for the harm caused to SoundExchange as a result of their failure to make all required payments as described above.

## COUNT TWO

**Violation of 37 C.F.R. § 380.6 – Non-Payment Of Statutory Royalties Uncovered By Audit**
**(Against Sonos, Inc. and Rhapsody International Inc.)**

51.  SoundExchange incorporates by reference paragraphs 1 to 49 as if fully set forth herein.

52.  Pursuant to applicable regulations, SoundExchange initiated an additional audit in January 2023 for the years 2020 to 2022.

53.  The final report, dated October 24, 2023, found that Sonos and Napster owed royalties and late fees for the covered period.

54.  Sonos and Napster have not paid all of the amounts owed pursuant to the October 24, 2023 audit.  Accordingly, Sonos and Napster have violated 37 C.F.R. § 380.6 by failing to make all royalty payments owed under 37 C.F.R. § 380.2, 37 C.F.R. § 380.3, 37 C.F.R. § 380.10, and 17 U.S.C. § 114(f)(3)(B).

55.  Sonos and Napster have made certain payments that fall far short of their obligations.  Accordingly, Sonos and Napster, after subtracting payments made to date, owe royalties for the period beginning October 2022 which would have been due no later than December 15, 2022.

56. Sonos and Napster owe at least $3,423,844.41 in unpaid royalties, late fees, and audit costs. Late fees and interest continue to accrue at the statutory rates.

57. Sonos and Napster are jointly and severally liable for the harm caused to SoundExchange as a result of their failure to make all required payments as described above.

## DEMAND FOR JURY TRIAL

SoundExchange hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SoundExchange respectfully prays for judgment against Sonos and Napster as follows:

a. For compensatory damages corresponding to Sonos and Napster's underpayment of statutory license fees and associated late fees, in such amounts to be determined at trial;

b. For pre-judgment and post-judgment interest;

c. For SoundExchange's costs, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

d. For any other relief the Court deems just and proper.

DATED:  June 16, 2025               COBLENTZ PATCH DUFFY & BASS LLP

                                    By:  */s/ Christopher J. Wiener*
                                         CHRISTOPHER J. WIENER

                                         Attorneys for Plaintiff
                                         SOUNDEXCHANGE, INC.