GREENBERG TRAURIG, LLP
Nina D. Boyajian (SBN 246415)
*BoyajianN@gtlaw.com*
Layal L. Bishara (SBN 329154)
*BisharaL@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

GREENBERG TRAURIG, LLP
Justin A. MacLean (*Admitted Pro Hac Vice*)
Justin.MacLean@gtlaw.com
One Vanderbilt Avenue
New York, NY 10017
Tel: 212-801-9200; Fax: 212-801-6400

Attorneys for Defendant Sonos, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation,<br><br>             Plaintiff,<br>v.<br><br>SONOS, INC., a Delaware corporation; and RHAPSODY INTERNATIONAL INC. dba NAPSTER, a Delaware corporation,<br><br>             Defendants. | Case No.: 2:25-cv-05454-HDV-BFM<br><br>**DEFENDANT SONOS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY**<br><br>*[Filed Concurrently with Declaration of Nina D. Boyajian; Proposed Order; Request for Judicial Notice; Declaration of Nina D. Boyajian in Support of Request for Judicial Notice; Proposed Order]*<br><br>Date:     November 13, 2025<br>Time:    10:00 a.m.<br>Place:    Courtroom 5B<br><br>Judge:    Hon. Hernán D. Vera<br>Action Filed: June 16, 2025 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2025, at 10:00 a.m., in Courtroom 5B of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Sonos, Inc. ("Sonos") will, and hereby does, move for an order dismissing the complaint of Plaintiff SoundExchange, Inc. ("SoundExchange") pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, stay the action.

On August 7, 2025, the Honorable Naomi Reice Buchwald in the Southern District of New York issued a Memorandum and Order in the case of *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 1:24-cv-05491 (S.D.N.Y.) ("*Sirius*") finding that SoundExchange does not have standing under Section 114 of the Copyright Act to litigate royalty disputes (ECF 86 ("*Sirius* Order")). The *Sirius* Order has a collateral estoppel effect on this case because (1) the issue decided in the *Sirius* Order is identical to the one sought to be litigated here; (2) the *Sirius* Order is a final judgment on the merits; and (3) SoundExchange—the party against whom collateral estoppel is asserted—was a party in *Sirius*. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012). While Sonos contends that this action should be dismissed in its entirety and with prejudice based on the collateral estoppel effect of *Sirius*, should the Court be disinclined to dismiss the case at this time, it should be stayed in its entirety pending a final, non-appealable judgment in *Sirius*.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Nina D. Boyajian in support of the Request for Judicial Notice, the Declaration of Nina D. Boyajian pursuant to Civil Local Rule 7-3, all pleadings and files in this action, all matters of which this Court may take judicial notice, and upon such other and further evidence and argument as may be presented to the Court at or before the hearing.

This Motion is made following counsel for the parties' meet and confer conference pursuant to Civil Local Rule 7-3, held on August 28, 2025. At the meet-and-confer, SoundExchange's counsel advised that he believed the *Sirius* Order was wrongly decided, is not binding on this Court, and SoundExchange

//

//

1

intends to appeal the *Sirius* Order to the Court of Appeals for the Second Circuit. Accordingly, SoundExchange opposes the Motion.

Dated: September 9, 2025                    GREENBERG TRAURIG, LLP

By: /s/ Nina D. Boyajian
Nina D. Boyajian
*Attorneys for Defendant Sonos, Inc.*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ............................................................................................. 1

II.  RELEVANT ALLEGATIONS AND BACKGROUND ................................................... 2

   A.   SoundExchange's Complaint ................................................................................ 2

   B.   The Preclusive Order in *SoundExchange, Inc. v. Sirius XM Radio Inc.*,
        1:24-cv-05491 (S.D.N.Y.) ..................................................................................... 2

III. LEGAL STANDARD ............................................................................................................ 4

IV.  ARGUMENT .......................................................................................................................... 4

   A.   SoundExchange Is Collaterally Estopped from Bringing the Alleged
        Claims Against Sonos. .......................................................................................... 4

   B.   In the Alternative, this Action Should Be Stayed Pending the Entry of a
        Final, Non-Appealable Order in *Sirius*. ............................................................... 6

V.   CONCLUSION ....................................................................................................................... 7

ACTIVE 714089683

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................4

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015)...................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................4

*Collins v. DR Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) .....................................................................................................5

*Convergence Corp. v. Videomedia*,
    539 F. Supp. 760 (N.D. Cal. Apr. 15, 1981) .............................................................................5

*Cygnus Telecoms. Tech., LLC v. Am. Int'l Telephonics, LLC*,
    569 F. Supp. 2d 1035 (N.D. Cal. 2008) .....................................................................................6

*Janjua v. Neufeld*,
    933 F.3d 1061 (9th Cir. 2019) ...................................................................................................5

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...................................................................................................................6

*Leyva v. Certified Grocers of Cal. Ltd.*,
    593 F.2d 857 (9th Cir. 1979) .....................................................................................................6

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ...................................................................................................7

*Mack v. South Bay Beer Distribs.*,
    798 F.2d 1279 (9th Cir. 1986) ...................................................................................................4

*Oyeniran v. Holder*,
    672 F.3d 800 (9th Cir. 2012) .....................................................................................................5

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) .....................................................................................................4

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)...................................................................................................................5

*Peck v. Cnty. of Orange*,
    528 F. Supp. 3d 1100 (C.D. Cal. 2021) .....................................................................................6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ........................................................................................... 5

*Shaw v. Hahn*,
    56 F.3d 1128 (9th Cir. 1995) ...................................................................................... 4, 5

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) .................................................................................... 1, 5

*SoundExchange, Inc. v. Sirius XM Radio Inc.*,
    No. 1:24-cv-05491 (S.D.N.Y. Aug. 7, 2025) ........................................................ *passim*

*Tripati v. Henman*,
    857 F.2d 1366 (9th Cir. 1988) ......................................................................................... 5

*XR Commc'ns, LLC v. D-Link Sys., Inc.*,
    No. 8:17-cv-00596-DOC-JDE, 2022 U.S. Dist. LEXIS 25984 (C.D. Cal. Jan. 4, 2022) ....... 6

**Statutes**

17 U.S.C. § 114(f)(3)(B) ................................................................................................ *passim*

17 U.S.C. § 115 ...................................................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 4

ACTIVE 714089683

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

SoundExchange, Inc. ("SoundExchange") brings claims against Sonos, Inc. ("Sonos") and Rhapsody International Inc. ("Napster") for alleged underpayment and nonpayment of statutory royalties under the Copyright Act. SoundExchange's claims against Sonos are meritless—Sonos has no obligation to pay royalties to SoundExchange as that obligation solely belongs to Napster under the parties' agreements. But the Court does not need to reach the merits of SoundExchange's claims against Sonos for purposes of this Motion.

For this Motion, the Court need only find that SoundExchange is collaterally estopped from asserting claims for underpayment or nonpayment of royalties under Section 114 of the Copyright Act. On August 7, 2025, the Honorable Naomi Reice Buchwald in the Southern District of New York issued a Memorandum and Order in the case of *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 1:24-cv-05491 (S.D.N.Y.) ("*Sirius*") finding that SoundExchange lacks standing under Section 114 of the Copyright Act to litigate royalty disputes (ECF 86 ("*Sirius* Order")).[1] The *Sirius* court concluded that "Section 114 fails to confer on SoundExchange – either expressly or impliedly – the authority to commence a legal action," and dismissed SoundExchange's claims with prejudice. (*Sirius* Order at 33.)

Because there is no daylight between SoundExchange's claims against Sirius and its claims against Sonos here, SoundExchange is collaterally estopped from asserting those claims. Each of the elements of collateral estoppel is met: (1) the issue decided in the *Sirius* Order is identical to the one sought to be litigated here; (2) the *Sirius* Order is a final judgment on the merits; and (3) SoundExchange—the party against whom collateral estoppel is asserted—was a party in *Sirius*. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012). Accordingly, SoundExchange's Complaint against Sonos should be dismissed with prejudice. In the alternative, this action should be stayed in its entirety pending a final, non-appealable judgment in *Sirius*.

---

[1] The *Sirius* Order is attached as Exhibit A to the concurrently filed Declaration of Nina D. Boyajian in support of Request for Judicial Notice ("Boyajian Decl.").

1

## II. RELEVANT ALLEGATIONS AND BACKGROUND

### A. SoundExchange's Complaint

SoundExchange alleges that Sonos, through its streaming platform, Sonos Radio, is a statutory licensee of SoundExchange's "copyrighted sound recordings," which are streamed on Sonos Radio. (Compl. ¶¶ 17, 20.) SoundExchange alleges that Sonos Radio is "powered by Napster," and that for "the transmission periods April 2020 through April 2022, Napster submitted the required statements of account and timely paid all royalties due to SoundExchange, as Sonos's authorized agent." (*Id.* ¶¶ 24-25.) According to SoundExchange, after Napster was "acquired by [] venture capital firms," "Sonos (as the owner and operator of Sonos Radio) and Napster (as Sonos's agent) failed to submit statements of account or pay royalties to SoundExchange." (*Id.* ¶¶ 26, 29.)

SoundExchange alleges that it subsequently retained an auditor to audit Sonos Radio, and that the auditor concluded "that Napster's acquisition in May 2022 resulted in a complete breakdown of reporting and payment for the Sonos Radio service." (*Id.* ¶¶ 30-35.) SoundExchange further alleges "[i]n or about April 2023, Sonos ended its partnership with Napster and transitioned the Sonos Radio service backend to Deezer." (*Id.* ¶ 38.) SoundExchange claims "Sonos and Napster have made certain payments that fall far short of their obligations" and have "failed to pay at least $3,423,844.41 comprising royalties owed for the period October 2022 to April 2023, interest, late fees, and auditor fee-shifting costs, and subtracting Sonos and Napster's payments made to date." (*Id.* ¶ 41.) Based on these allegations, SoundExchange brings claims against Sonos and Napster for (1) underpayment of statutory royalties under 17 U.S.C. § 114(f)(3)(B), and (2) non-payment of statutory royalties under 17 U.S.C. § 114(f)(3)(B). (*Id.* ¶¶ 42-57.)

### B. The Preclusive Order in *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 1:24-cv-05491 (S.D.N.Y.)

SoundExchange's claims in *Sirius* are no different from its claims against Sonos here. In *Sirius*, SoundExchange brought a "copyright action against Sirius, alleging that it has failed to comply with its royalty payment obligations under Section 114" of the Copyright Act. (*Sirius* Order at 6.) Sirius moved for judgment on the pleadings on the grounds that Section 114 does not give SoundExchange a private right of action to collect underpaid royalties and thus SoundExchange lacks standing to bring such claims. In granting Sirius's motion, the court ruled:

- "[T]here is a dearth of evidence, let alone 'substantial evidence,' for us to infer that Congress's omission of any legal authority for [a private right of action for] SoundExchange in Section 114 was anything but deliberate…Thus, the text of the Copyright Act clearly lacks an express conferral of a right of action upon SoundExchange." (*Id.* at 12.)

- "Section 114 lacks any rights creating language as to SoundExchange. Even if it could be so interpreted, Section 114 does not 'manifest[] an intent to 'create . . . a private remedy.' Rather, Section 114 outlines the '[s]cope of exclusive rights in sound recordings,' namely, by granting artists and record companies that create sound recordings a mechanism, through an intermediary 'collective,' to license those rights for public dissemination of their copyrighted works." (*Id.* at 15 (internal citations omitted).)

- "Congress's conferral of several enforcement methods other than litigation counsels against implying a right of action for SoundExchange." (*Id.* at 20.)

- "Section 115 of the Copyright Act … endows the Mechanical Licensing Collective with the authority to challenge a noncompliant licensee by 'commenc[ing] an action in an appropriate district court of the United States for damages and injunctive relief.' §§ 115(6)(A)-(C)(i). This section is particularly salient because the legally-empowered MLC serves a functionally equivalent role to that of [SoundExchange] under Section 114. This is powerful evidence that Congress's omission of legal authority for SoundExchange was intentional." (*Id*. at 21-22.)

The court rejected each of SoundExchange's arguments in support of standing. First, SoundExchange argued that the text of Section 114, which refers to the "permissibility of deducting costs from licensing and royalty and enforcement efforts" in a statutorily-prescribed accounting mechanism for distributing royalties to recording artists and labels, "necessarily implies that SoundExchange can enforce artists' rights via legal action" in district court. (*Id.* at 15-16.) The court carefully considered and rejected this argument for a variety of reasons. (*Id.* at 16-18.)

Second, in response to SoundExchange's policy arguments, the court held that it could "not opine on whether SoundExchange's policy arguments are reasonable, practical, or beneficial, as [it was] powerless to rely on any such arguments to rewrite the statute." (*Id.* at 25.)

Third, the court rejected SoundExchange's argument that it has standing to sue because it has sued in the past as failing "on the law and on the facts." (*Id*. at 25-29.)

Fourth, the court found as "misplaced" SoundExchange's reliance on legislative history: "Reliance on legislative history is inappropriate when the statutory text is clear…even if we were to consider legislative history, we would find that it fails to offer persuasive evidence of Congress's intent to empower SoundExchange with the type of litigation authority plaintiff [] suggest[s]… In short, the legislative history

3

ACTIVE 714089683

does not advance plaintiff's [] contention that Section 114 should be read as extending litigation enforcement authority to SoundExchange." (*Id.* at 29-30.)

The *Sirius* court's holding is clear: "Section 114 fails to confer on SoundExchange – either expressly or impliedly – the authority to commence a legal action." (*Id.* at 33.) Accordingly, Judge Buchwald granted Sirius's motion, and judgment was entered thereon. (*See* Boyajian Decl., Ex. B.)

## III. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts must generally accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss based on the doctrine of collateral estoppel, "a court may take judicial notice of facts outside the pleadings." *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citations omitted). Looking "beyond the complaint to matters of public record does not convert a Rule 12(b)(6) motion to one for summary judgment." *Id.*; *see also Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (taking judicial notice of an order in another case to determine applicability of collateral estoppel).

## IV. ARGUMENT

### A. SoundExchange Is Collaterally Estopped from Bringing the Alleged Claims Against Sonos.

"Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first

proceeding.'" *Skilstaf, Inc.*, 669 F.3d at 1021 (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006)); *see also Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)) (collateral estoppel applies where "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Shaw*, 56 F.3d at 1131 (the doctrine of collateral estoppel "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.").

Each of the collateral estoppel elements is met here.

**The issue decided in the *Sirius* Order is identical to the one sought to be litigated here.** The threshold issue for the viability of SoundExchange's claims against Sonos is whether SoundExchange has standing to bring claims for unpaid and/or underpaid royalties under the Copyright Act. As discussed above, that is the same issue decided in the *Sirius* Order, and the *Sirius* court unequivocally found that SoundExchange lacked standing to bring such claims.

**The *Sirius* Order is a final judgment on the merits.** The *Sirius* court entered judgment based on the *Sirius* Order. (*See* Boyajian Decl., Ex. B.) Thus, the *Sirius* court entered a final judgment dismissing with prejudice SoundExchange's complaint based on lack of standing to bring claims for unpaid and/or underpaid royalties under Section 114 of the Copyright Act—again, the same claims SoundExchange brings against Sonos here. That SoundExchange has filed a notice of appeal of the *Sirius* Order is of no consequence. The Ninth Circuit has held that "a final judgment retains its collateral estoppel effect…while pending appeal." *Collins v. DR Horton, Inc.*, 505 F.3d 874, 882-83 (9th Cir. 2007) ("the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment"); *see also Tripati v. Henman,* 857 F.2d 1366, 1367 (9th Cir. 1988) (stating that a pending appeal does not affect a judgment's finality for preclusion purposes); *Convergence Corp. v. Videomedia*, 539 F. Supp. 760, 762 (N.D. Cal. Apr. 15, 1981) ("It is a well-established general rule, however, that pendency of an appeal does

not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel."); *Cygnus Telecoms. Tech., LLC v. Am. Int'l Telephonics, LLC*, 569 F. Supp. 2d 1035, 1038 (N.D. Cal. 2008) (granting motion to dismiss based on collateral estoppel and holding "the pendency of an appeal does not prevent this Court from applying collateral estoppel"); *XR Commc'ns, LLC v. D-Link Sys., Inc.*, No. 8:17-cv-00596-DOC-JDE, 2022 U.S. Dist. LEXIS 25984, at *14 (C.D. Cal. Jan. 4, 2022) (granting motion for judgment on the pleadings based on collateral estoppel and citing to the Ninth Circuit's "clear instructions" that pendency of appeal does not prevent preclusive effect).

**SoundExchange—the party against whom collateral estoppel is asserted—was a party in *Sirius*.** Finally, the third element of collateral estoppel has also been satisfied—SoundExchange was the plaintiff in *Sirius* and is the plaintiff here. It had a full and fair opportunity to litigate the issue of standing; indeed, it marshalled a host of trade organizations as *amici curiae* on its behalf. (*See* Boyajian Decl., Ex. C (*Sirius*, ECF No. 77).) The *Sirius* court rejected the arguments of SoundExchange and its *amici*.

\* \* \*

Each of the elements for collateral estoppel is met here. The *Sirius* court's ruling that SoundExchange lacks standing to sue for nonpayment and underpayment of royalties precludes religitation of the standing issue here, even if SoundExchange believes *Sirius* was wrongly decided. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) ("Issue preclusion prevents relitigation of wrong decisions just as much as right ones.") (cleaned up). Accordingly, SoundExchange's claims against Sonos should be dismissed with prejudice.

### B. In the Alternative, this Action Should Be Stayed Pending the Entry of a Final, Non-Appealable Order in *Sirius*.

If the Court declines to dismiss SoundExchange's claims against Sonos on collateral estoppel grounds at this stage, Sonos respectfully requests that the action be stayed in its entirety pending a final, non-appealable judgment in *Sirius*.

A district court has discretionary power to stay proceedings. *See Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1105 (C.D. Cal. 2021) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The Court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva*

*v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The factors to be weighed in deciding whether to stay a pending proceeding are (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Each of these factors weighs in favor of a stay. First, there will be no damage from the granting of a stay. SoundExchange has allegedly known of its claims against Sonos since 2022—three years before it filed this action; any additional delay would very likely be shorter, particularly given that a notice of appeal of the *Sirius* order has already been filed. Second, and on the other hand, because the *Sirius* Order is dispositive of this case, as discussed above, Sonos will be unfairly prejudiced by having to spend time and resources litigating this action that will be disposed of on collateral estoppel grounds if the *Sirius* Order is upheld. Third, a stay will promote judicial efficiency and simplify the issues because a threshold standing issue is involved, and at the latest, this action will be dismissed on collateral estoppel grounds once the *Sirius* Order has been upheld.

## V. CONCLUSION

SoundExchange has already litigated and lost the issue of whether it has standing to assert claims for underpayment of statutory royalties under 17 U.S.C. § 114, the same claims it asserts against Sonos in this action. Accordingly, SoundExchange is collaterally estopped from bringing its claims against Sonos, and the Complaint against Sonos should be dismissed with prejudice. In the alternative, if the Court is not inclined to dismiss the Complaint at this stage, Sonos respectfully requests that the Court stay the action in its entirety pending the entry of a final, non-appealable judgment in *Sirius*.

Dated: September 9, 2025                              GREENBERG TRAURIG, LLP

By: */s/ Nina D. Boyajian*
Nina D. Boyajian
*Attorneys for Defendant Sonos, Inc.*

ACTIVE 714089683

**L.R. 11-6.2 CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Defendant Sonos, Inc., certifies that this brief contains 2,756 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 9, 2025            GREENBERG TRAURIG, LLP

By: /s/ Nina D. Boyajian
Nina D. Boyajian
*Attorneys for Defendant Sonos, Inc.*